IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY LEMOYNE ZANICKY,            )
                                 )
        Plaintiff,                )
                                 )
    v.                           )    Civil Action No. 11-1360
                                 )    Electronic Filing
MICHAEL J. ASTRUE,               )
COMMISSIONER OF SOCIAL           )
SECURITY,                        )
                                 )
        Defendant.                )

**OPINION**

**I.    INTRODUCTION**

Plaintiff Gary Lemoyne Zanicky ("Zanicky") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, the motion for summary judgment filed by the Commissioner (*ECF No. 13*) will be denied. The motion for summary judgment filed by Zanicky (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The decision of the Commissioner will be vacated, and the case will be remanded to him for further consideration of Zanicky's applications for DIB and SSI benefits.

1

## II. PROCEDURAL HISTORY

Zanicky protectively applied for DIB and SSI benefits in September 2008, alleging that he had become "disabled" on November 21, 2005. R. 15, 85, 88, 114. Pennsylvania's Bureau of Disability Determination denied the applications on March 2, 2009. R. 36, 41. Zanicky responded on March 6, 2009, by filing a timely request for an administrative hearing. R. 46. A hearing was scheduled for December 18, 2009, before Administrative Law Judge ("ALJ") James J. Pileggi. R. 82.

In a letter dated December 2, 2009, Zanicky's counsel informed the ALJ that Zanicky was suffering from an "abscessed tooth," and that a procedure to remove the tooth had been scheduled for December 29, 2009. R. 83. The letter asked that the hearing be postponed until after the procedure. R. 83. In a subsequent letter to the ALJ dated December 8, 2009, Zanicky's counsel stated that Zanicky was waiving his right to appear for a hearing, and that the case was being submitted on the basis of the documentary record. R. 84. The ALJ denied Zanicky's claims in a decision dated February 9, 2010. R. 12-21.

Zanicky filed new applications for DIB and SSI benefits. He filed a request for review with the Appeals Council on March 3, 2010, seeking administrative review of the ALJ's decision. R. 7-8. On October 24, 2010, the Social Security Administration ("SSA") determined that Zanicky had become "disabled" on February 10, 2010, and that he was entitled to benefits under the Act based on the evidence submitted in support of his new applications. ECF No. 11-1. The Appeals Council denied Zanicky's request for review on August 26, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. 1.

Zanicky commenced this action on October 26, 2011, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 3. Zanicky and the Commissioner filed motions for

summary judgment on May 9, 2012, and June 8, 2012, respectively. ECF Nos. 10 & 13. These motions are the subject of this memorandum opinion.

**III. STANDARD OF REVIEW**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is

4

determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.    THE ALJ'S DECISION**

In his decision, the ALJ determined that Zanicky had not engaged in substantial gainful activity subsequent to his alleged onset date. R. 17. Zanicky was found to be suffering from

5

depression, obsessive compulsive disorder ("OCD"), a panic disorder, hypertension, a history of alcohol abuse, and "mild left secular dysfunction." R. 17. His depression, OCD and panic disorder were deemed to be "severe" under the Commissioner's regulations. R. 17; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Zanicky's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17-19.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Zanicky's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, repetitive tasks which are performed in [sic] routine work setting using routine work processes; the claimant is precluded from high stress work which is here defined as work involving high production quotas or close attention to quality production standards; the claimant is unable to engage in more than incidental interaction with members of the general public.

R. 19. Zanicky had "past relevant work"[2] experience as a mental health aide, custodian and groundskeeper. R. 107, 117. The ALJ concluded that Zanicky was still capable of working as a custodian or groundskeeper. R. 20. Therefore, it was determined that Zanicky could return to his past relevant work. R. 20.

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

Zanicky was born on October 21, 1959, making him forty-six years old on his alleged onset date and fifty years old on the date of the ALJ's decision. R. 20, 85, 88. Prior to October 21, 2009, he was classified as a "younger person" under the Commissioner's regulations.[3] 20 C.F.R. §§ 404.1563(c), 416.963(c). Zanicky became a "[p]erson closely approaching advanced age" on his fiftieth birthday.[4] 20 C.F.R. §§ 404.1563(d), 416.963(d). He had the equivalent of a high school education[5] and an ability to communicate in English. R. 105, 111; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ made the alternative finding that Zanicky could perform the duties of other jobs existing in significant numbers in the national economy. R. 20-21.

## V. MEDICAL EVIDENCE

Zanicky worked as a groundskeeper for over four years. R. 107, 117. He left that job on November 21, 2005, due to "anxiety and stress." R. 106. A cardiolite stress test performed on December 5, 2005, revealed that Zanicky was suffering from "[m]ild left ventricular dysfunction." R. 143.

Despite the existence of his mental impairments, Zanicky did not seek mental health treatment until January 14, 2009. R. 236, 241. On January 28, 2009, he attended a treatment session with Patricia D. Thomas ("Thomas"), a mental health therapist, at Glade Run Lutheran Services ("Glade Run"). R. 241. Zanicky was encouraged to expand his social network and experience at least two social outings per month. R. 241. It was noted that a psychiatric

---

[3] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. § 404.1563(c).
[4] In his decision, the ALJ incorrectly stated that Zanicky had been "an individual closely approaching advanced age" on his alleged onset date. R. 20.
[5] Zanicky obtained his General Educational Development ("GED") certification in 1983. R. 111.

7

examination would be necessary to determine his medication regimen and course of treatment. R. 241.

On February 10, 2009, Dr. T. David Newman conducted a consultative psychological evaluation of Zanicky in connection with his applications for DIB and SSI benefits. R. 193-197. Based on the findings of his evaluation, Dr. Newman reported that Zanicky had "moderate" limitations in his abilities to understand, remember and carry out short, simple instructions and interact appropriately with supervisors and members of the general public. R. 195-196. Zanicky was found to have "moderate" to "marked" limitations in his abilities to understand, remember and carry out detailed instructions, interact appropriately with co-workers, and respond appropriately to work pressures in a usual work setting. R. 195-196. Dr. Newman indicated that Zanicky had only a "slight" limitation in his ability to respond appropriately to changes in a routine work setting. R. 196.

Dr. Edward Zuckerman, a non-examining psychological consultant, opined on February 17, 2009, that Zanicky was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. 201. In the narrative portion of his report, Dr. Zuckerman explained:

> The claimant can make simple decisions. He is able to carry out very short and simple instructions. He is able to maintain concentration and attention for normal periods of time. He would not require special supervision in order to sustain a work routine. He is somewhat socially isolated but can relate normally. He is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. Additionally, he is self-sufficient. He can sustain an ordinary routine without special supervision. Also, he evidences some limitation in dealing with work stresses and public contact. There are no restrictions in his abilities in regards to understanding and memory.

R. 201.  Dr. Zuckerman purported to give "great weight" to Dr. Newman's examination findings.  R. 201.  Dana Rankin, a non-examining medical consultant, indicated on February 27, 2009, that Zanicky had no physical limitations.  R. 28-33.

Dr. Linda Humphreys, a psychiatrist affiliated with Glade Run, evaluated Zanicky on March 25, 2009.  R. 236-238.  During the evaluation, Zanicky complained of symptoms attributable to his OCD.  R. 236-237.  He stated that he would repeatedly check his residence for safety hazards before going to bed, and that he would get out of bed only when his clock showed even-numbered minutes.  R. 236.  Zanicky described panic attacks that he had experienced in the middle of the night.  R. 237.  He explained that anxiety attacks would occur whenever he had to leave his home.  R. 236.  In the portion of her report describing Zanicky's social history, Dr. Humphreys observed:

> Gary quit his last job in November 2005.  He stated, "I loved my job."  "It was a dream job."  He had worked there for eight years in township maintenance, but was unable to get up in the morning and get out of the house in a reasonable amount of time due to his obsessions and compulsions and due to his severe anxiety attacks and depression.

R. 237.  Dr. Humphreys determined that Zanicky was suffering from OCD, a major depressive disorder, and a panic disorder with agoraphobia.  R. 237-238.  She assigned him a Global

9

Assessment of Functioning ("GAF") rating of forty-two.[6] R. 238. It was noted that Zanicky's highest GAF score throughout the preceding year had been fifty-two.[7] R. 238.

Zanicky continued to attend therapy sessions at Glade Run for the remainder of 2009. R. 220-234. He complained of increased anxiety on May 13, 2009. R. 234. His medications were adjusted to alleviate that problem. R. 234. Two weeks later, Zanicky reported that the increased dosages had caused him to experience abdominal discomfort. R. 233. On June 10, 2009, he complained that his OCD had worsened. R. 231. Although his panic attacks had subsided, Zanicky expressed a reluctance to leave his house. R. 232. He feared the onset of panic attacks whenever he had to do something out of the ordinary. R. 229. As of August 19, 2009, Zanicky was trying to get out of bed on even-numbered minutes on "even days" and on odd-numbered minutes on "odd days." R. 228. On that occasion, Thomas observed that Zanicky appeared to be more concerned about obtaining disability benefits than he was about overcoming the behaviors caused by his OCD. R. 228. Zanicky reported a "significant reaction" to his medications on September 9, 2009. R. 226. This reaction forced him to decrease the dosage of his medications, thereby causing his psychiatric symptoms to exacerbate. R. 226. One week later, it was noted that Zanicky could not tolerate high dosages of Effexor. R. 224. On September 23, 2009,

---

[6] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." *Taliaferro v. Astrue*, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). A GAF score falling between forty-one and fifty is *sometimes* indicative of an individual exhibiting "serious impairment in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* be "unable to keep a job." *Id.*

[7] A GAF rating falling between fifty-one and sixty *may* be indicative of an individual who exhibits "moderate difficulty in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. An individual with a GAF score in this range *may* experience "conflicts with peers or co-workers." *Id.*

Zanicky told Thomas that he was hesitant to start experimenting with new medications. R. 223. He was given a prescription for Alprazolam. R. 221. Nevertheless, Zanicky continued to experience increased anxiety and depression. R. 219. Thomas observed on October 28, 2009, that Zanicky could not take his Effexor as prescribed without experiencing serious side effects. R. 220.

Dr. Humphreys completed a "medical source statement" form on or around November 24, 2009.[8] R. 216-217. She indicated that Zanicky was "slightly" limited in his abilities to understand and remember detailed instructions and make judgments concerning simple work-related decisions. R. 217. Zanicky's ability to carry out instructions was deemed to be "markedly" limited.[9] R. 217. Dr. Humphreys asserted that Zanicky's OCD precluded him from carrying out instructions even though his understanding and memory were "adept." R. 217. It was further noted that "accurate observation" was "not possible" because Zanicky had not been working at the time of his initial appointment at Glade Run. R. 217.

The ALJ's decision denying Zanicky's claims was rendered on February 9, 2010. R. 12-21. In March 2010, Dr. Humphreys and Thomas completed an assessment form declaring Zanicky to be disabled because of rituals associated with his OCD.[10] ECF No. 11-2 at 2. They explained that Zanicky could not leave his home without engaging in compulsive rituals, and that contact with others would cause his anxiety to intensify. *Id.* Dr. Humphreys and Thomas also indicated that Zanicky was *per se* disabled under Listings 12.04 and 12.06. *Id.* at 3-11.

---

[8] The form was apparently faxed on November 24, 2009. R. 216-217. As the ALJ pointed out in his decision, the form was neither signed nor dated by Dr. Humphreys. R. 20, 216-217.
[9] The identified limitation was applicable to "short, simple instructions" as well as to "detailed instructions." R. 217.
[10] Thomas and Dr. Humphreys signed the form on March 29, 2010, and March 31, 2010, respectively. ECF No. 11-2 at 6.

11

On June 22, 2010, Dr. Humphreys reported that Zanicky had "marked" limitations in his abilities to understand, remember and carry out detailed instructions, respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. ECF No. 11-3 at 1. Dr. Humphreys further asserted that Zanicky had "moderate" limitations in his abilities to understand, remember and carry out detailed instructions and make judgments concerning simple work-related decisions. *Id.* It was noted that Zanicky needed to follow "rigid rituals" before leaving his home, and that he was not able to deal with people. *Id.* at 2. The SSA apparently relied on these later assessments in determining that Zanicky had become "disabled" on February 10, 2010.[11] ECF No. 11-1 at 1.

## VI. DISCUSSION

On October 24, 2010, the SSA found Zanicky to be "disabled" on the basis of the evidence submitted in support of his subsequent applications for DIB and SSI benefits. ECF No. 11-1. The Appeals Council denied Zanicky's request for review on August 26, 2011, even though he had already established the existence of a statutory disability as of February 10, 2010. R. 1. The Court has jurisdiction to review only the Commissioner's "final decision." *Califano v. Sanders*, 430 U.S. 99, 107-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Since the Appeals Council denied Zanicky's request for review, the Commissioner's "final decision" in this case is the decision rendered by the ALJ on February 9, 2010. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The Court does not have jurisdiction to review the Appeals Council's decision denying Zanicky's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992).

---

[11] It is not clear whether additional evidence was presented to the SSA in support of Zanicky's successful applications for benefits.

Under the Commissioner's regulations, Zanicky was free to submit "new and material evidence" to the Appeals Council in support of his request for review. 20 C.F.R. §§ 404.970(b), 416.1470(b). Although Zanicky's request for review was not denied until August 26, 2011, he did not provide the Appeals Council with the assessments completed by Dr. Humphreys and Thomas in March 2010 and June 2010. Those assessments, which were submitted to the SSA in support of Zanicky's subsequent applications for DIB and SSI benefits, are attached as exhibits to his brief. ECF Nos. 11-2 & 11-3. They are not included within the administrative record filed by the Commissioner.[12] ECF No. 6.

Only the evidence that was presented to the ALJ may be considered for the purpose of determining whether his decision is supported by substantial evidence. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011). The exhibits attached to Zanicky's brief can be considered only for the purpose of determining whether a remand is appropriate under the sixth sentence of § 405(g). *Matthews*, 239 F.3d at 593. That sentence provides a reviewing court with the authority to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). Evidence that is "merely cumulative of what is already in the record" cannot be fairly characterized as "new" within the meaning of the statute. *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). "[T]he materiality standard requires that there be a reasonable probability that the new evidence would have changed the outcome of the [Commissioner's] determination." *Id.* "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied,

---

[12] The applicable statutory provision requires the Commissioner to "file a certified copy of the transcript of the record" along with his answer to a plaintiff's complaint. 42 U.S.C. § 405(g).

13

and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* A claimant attempting to satisfy the "good cause" requirement must, at a minimum, articulate his or her reasons for not procuring the evidence at a time when it could have been considered by an administrative law judge. *Chandler*, 667 F.3d at 360.

The assessments provided by Dr. Humphreys and Thomas in March 2010 and June 2010 are both "new" and "material." The limitations described in those assessments extend beyond those contained in the earlier assessment supplied by Dr. Humphreys. ECF Nos. 11-2 & 11-3; R. 216-217. In that sense, the "new" evidence put forth by Zanicky is "not merely cumulative of what is already in the record." *Szubak*, 745 F.2d at 833. Moreover, the evidence is sufficiently "relevant and probative" to satisfy the Act's "materiality" requirement. *Id.* Indeed, the submission of that evidence ultimately led to a finding of statutory disability. ECF No. 11-1. Because the evidence was procured shortly after the date of the ALJ's decision, it is relevant for the purpose of determining whether Zanicky was "disabled" before that date. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-1383 (Fed.Cir. 2009).

The remaining question is whether Zanicky had "good cause" for not obtaining the "new" assessments sooner. *Chandler*, 667 F.3d at 360. Zanicky points out that the documentary evidence attached to his brief "did not exist" at the time of the ALJ's decision. ECF No. 11 at 24. While that is obvious, it is not sufficient to satisfy the Act's "good cause" requirement. Zanicky must establish that he had "good cause" for *failing to obtain* the assessments at an earlier time. *Matthews*, 239 F.3d at 595. His treating relationship with Glade Run began on January 14, 2009. R. 236, 241. Dr. Humphreys first evaluated Zanicky on March 25, 2009. R. 236-238. More than a year elapsed between Zanicky's first therapy session with Thomas and the

14

date of the ALJ's decision. Dr. Humphreys' initial evaluation of Zanicky preceded the ALJ's decision by more than ten months. Furthermore, Zanicky neglected to submit the "new" evidence to the Appeals Council even though it was available to him more than a year before the denial of his request for review.[13] R. 1. The United States Court of Appeals for the Third Circuit has admonished that sentence six cannot be used as an "end-run method of appealing an adverse ruling." *Szubak*, 745 F.2d at 834. Since Zanicky fails to explain why he did not attempt to procure the "new" evidence at an earlier time, he cannot surmount sentence six's "good cause" hurdle. *Chandler*, 667 F.3d at 360. Under these circumstances, Zanicky can challenge the Commissioner's "final decision" only in relation to the evidence that was actually presented to the ALJ. *Matthews*, 239 F.3d at 592-595.

The parties disagree as to whether Zanicky voluntarily waived his right to a hearing. Zanicky maintains that his request for a postponement was denied, and that he was unable to appear for the scheduled hearing because of his temporary dental impairment. ECF No. 11 at 20-22. The Commissioner posits that Zanicky's waiver was "clear and unambiguous." ECF No. 14 at 18. There is no need for the Court to consider whether the waiver was voluntary, or whether the hearing should have been rescheduled. Regardless of whether it was necessary for the ALJ to conduct an evidentiary hearing[14] before denying Zanicky's applications for benefits, it was

---

[13] If the Appeals Council had received the "new and material evidence" and denied Zanicky's request for review anyway, that evidence could not have been considered for the purpose of determining whether the ALJ's decision (*i.e.*, the Commissioner's "final decision") is supported by substantial evidence. *Matthews v. Apfel*, 239 F.3d 589, 592-595 (3d Cir. 2001). Nonetheless, it is certainly conceivable that the Appeals Council may have granted the request for review if the "new and material evidence" had been submitted. 20 C.F.R. §§ 404.970(b), 416.1470(b).
[14] The first sentence of § 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made *after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g)(emphasis added). This

15

impermissible for such a denial to be predicated on factual findings lacking in evidentiary support.

The ALJ accorded "little weight" to Dr. Humphreys' assessment of November 24, 2009, because of the notation observing that "accurate observation" of Zanicky's activities was "not possible." R. 20, 217. The notation made reference to the fact that Zanicky had not been working when he initially sought treatment at Glade Run, making it difficult for Dr. Humphreys to assess his work-related abilities and limitations. R. 217. The ALJ purported to give "great weight" to the opinions provided by Dr. Newman and Dr. Zuckerman. R. 20. Zanicky contends that the ALJ should have credited Dr. Humphreys' opinion over those of Dr. Newman and Dr. Zuckerman. ECF No. 11 at 14-17.

The ALJ was not required to credit Dr. Humphreys' opinion declaring Zanicky to be disabled. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011). Moreover, the ALJ was entitled to consider the context in which that opinion had been provided in determining whether it was sufficiently probative to outweigh the competing assessments supplied by Dr. Newman and Dr. Zuckerman. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 306-307 (3d Cir. 1999). As the ALJ noted, Dr. Humphreys had specifically pointed out that her assessment was not based on an "accurate observation" of Zanicky's activities. R. 20, 217. It was emphatically

---

statutory language has been construed to preclude a court from reviewing discretionary administrative decisions that can be made in the absence of a hearing. *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Tobak v. Apfel*, 195 F.3d 183, 186-188 (3d Cir. 1999); *Stauffer v. Califano*, 693 F.2d 306, 307-308 (3d Cir. 1982). In this case, a hearing was scheduled for December 18, 2009, and Zanicky merely waived his *right to appear* for it. R. 82-84. The ALJ's decision denying Zanicky's applications for benefits constituted a "final decision of the Commissioner of Social Security made after a hearing to which [Zanicky] was a party" for purposes of § 405(g), even though no evidence was taken at the scheduled "hearing." *Granberg v. Bowen*, 716 F.Supp. 874, 877-878 (W.D.Pa. 1989). The Commissioner's decision directly adjudicated Zanicky's "claim of entitlement to benefits." *Matthews v. Eldridge*, 424 U.S. 319, 329, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Therefore, the Court has jurisdiction to entertain this action.

the province of the ALJ to assess the evidence contained in the record and determine the probative value of each medical opinion. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The inquiry, however, does not end there. Dr. Newman opined that Zanicky had a "moderate" to "marked" limitation in his ability to interact appropriately with co-workers. R. 196. Although the ALJ concluded that Zanicky was "unable to engage in more than incidental interaction with members of the general public," he did not limit Zanicky's potential contact with co-workers. R. 19. Dr. Newman indicated that Zanicky had a "moderate" to "marked" limitation in his ability to respond appropriately to work pressures in a usual work setting. R. 196. The ALJ *partially* accommodated that limitation by precluding jobs "involving high production quotas or close attention to quality production standards." R. 19. As Zanicky points out, the limitation identified by Dr. Newman would most likely preclude several jobs falling within the ALJ's residual functional capacity assessment. ECF No. 11 at 19. At a minimum, the ALJ was required to explain his reasons for discounting the limitations found by Dr. Newman. *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003). Because no such explanation can be found in the ALJ's decision, the factual findings supporting his residual functional capacity determination are simply "beyond meaningful judicial review." *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119 (3d Cir. 2000). Under these circumstances, his decision cannot be affirmed. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-506 (3d Cir. 2009).

Even if the ALJ's residual functional capacity finding could be sustained on the basis of the existing record, his decision would nevertheless be defective because of his failure to provide evidentiary support for his vocational findings. The ALJ summarily stated that Zanicky's past relevant work as a custodian or groundskeeper did not require the performance of work-related

17

activities precluded by his residual functional capacity. R. 20. The factual predicate for this determination remains a mystery. Although Zanicky answered some questions about his prior jobs when he applied for DIB and SSI benefits, the questions did not relate to whether those jobs had involved "high production quotas," "close attention to quality production standards," or "more than incidental interaction with members of the general public." R. 19, 117-120. The record is devoid of vocational expert testimony describing the manner in which those jobs are typically performed in the national economy. *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421, n. 3 (D.Del. 2002). These omissions are particularly glaring in light of the fact that Zanicky stopped working as a groundskeeper because of his medical condition. R. 106.

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003)(footnote omitted). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). An administrative law judge may rely on a Social Security Ruling "as a replacement for a vocational expert" only if it is "crystal-clear" that the Social Security Ruling is probative of the "occupational base" available to an individual with the claimant's limitations. *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). Although the ALJ referenced Social Security Rulings 96-8p and 96-9p in determining that Zanicky's limitations had "little or no effect on the occupational base of unskilled work at all exertional levels," he made no attempt to explain their probative value in this case. R. 21.

For the foregoing reasons, the ALJ's decision denying Zanicky's applications for DIB and SSI benefits is not "supported by substantial evidence." 42 U.S.C. § 405(g). The remaining

question is whether benefits should be awarded at this time, or whether the proper remedy is a remand for further development of the record. A judicially-ordered award of benefits is appropriate only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). Zanicky cannot satisfy this standard on the basis of the existing record. Although he alleges that he became "disabled" as early as November 21, 2005, he did not seek treatment at Glade Run until January 14, 2009. The record leaves many unanswered questions about Zanicky's work-related abilities and limitations between his alleged onset date and the date of the ALJ's decision. Accordingly, the proper remedy is a remand for further consideration of Zanicky's claims.

## VII. CONCLUSION

The Commissioner must afford Zanicky "an opportunity to be heard" during the course of the upcoming administrative proceedings. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010). That is especially true in view of the fact that the existing record contains no testimonial evidence. To the extent that the assessments prepared by Dr. Humphreys and Thomas in March 2010 and June 2010 shed light on Zanicky's ability (or inability) to work between November 21, 2005, and February 9, 2010, they must be considered by the Commissioner. *Reilly*, 571 F.3d at 1381-1383; *Reefer*, 326 F.3d at 381. Zanicky's disability has already been established as of February 10, 2010. ECF No. 11-1. It is now incumbent upon the Commissioner to determine whether the true onset of that disability preceded the date of the ALJ's decision. That determination can be facilitated by the taking of testimonial evidence from both Zanicky and a vocational expert.

The Commissioner's motion for summary judgment (*ECF No. 13*) will be denied. Zanicky's motion for summary judgment (*ECF No. 10*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The "final decision" of the Commissioner will be vacated, and the case will be remanded to him for further consideration of Zanicky's claims.

Date: January 14, 2013

<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc:  Christine M. Nebel, Esquire
    Paul Kovac, AUSA

   (*Via CM/ECF Electronic Mail*)